Please. Okay, very good. Just introduce yourself and if this is new for you, the Ninth Circuit, if you want to reserve any time, let us know. We'll try to help you, but you should keep track of your own time, okay? Thank you, Your Honor, but I have been here before and I appreciate your consideration. Okay, very good. May it please the court, my name is Frederick Kranz and I am here with Lynn DeLuco representing the appellants and defendants in this matter. In May and December of 2006, the plaintiffs entered into binding purchase and sale agreements with a 20% down payment to purchase condominiums at the Hard Rock Hotel in San Diego. By the end of 2007, the hotel had opened and the plaintiffs had received their units. In 2011, five years after the 20% down payment and the plaintiffs brought suit under ILSA and under the California Unfair Competition Law, the UCL. Five years. Eventually, cross motions for summary judgment were made by both the plaintiffs and defendants and after initially ruling for the defendants, the court ruled for the plaintiffs, holding that Business and Professions Code 1700 was invoked under the claims were not time-barred. In 2014, not long after the summary judgments were granted, Congress unanimously passed an amendment to ILSA which clarified the law and told HUD and the courts that ILSA never applied to condominiums. Where did it say that? It says it right in the act, Your Honor. I don't remember seeing that. As a matter of fact, why then did it talk about a 180-day effective date? Thank you. Again, one of my favorite talking points. 180 days, Your Honor, is without any legislative comment as to why it was why it was included. It simply appears. On the other side of the coin, Your Honor, we have the title of the act, clarifying amendment. We have all of the comments of the sponsors saying it's over, it's clarifying ILSA, and we have the unanimous vote of both the Senate and the House. Under Landgraft, which is your hurdle here, how does that work out in this case? Well, I think, Your Honor, Landgraft is the third level of the inquiry I think that the court must undertake. The first area of the inquiry that the court is required to undertake is whether Bradley takes this out of any consideration. Bradley, as you know, holds that it's the law at the time of the hearing that applies. So we might apply Bradley. The second part is to look... And what was that law from your perspective? Well, the law is today. Today is the hearing. Oh, this hearing? Yes, and that would be the Bradley analysis. Then you go back to Landgraft to determine whether or not that act that Congress passed was intended to apply to this transaction, right? Respectfully, no, Your Honor. Respectfully, we're not to Landgraft yet. We never get to Landgraft unless the court determines that this is not a clarifying amendment. That's the first inquiry, even under Landgraft. You have to make that decision. After we've gone through the Bradley analysis... Counsel, with respect, how can it be a clarifying amendment when there are 30 years worth of regulations promulgated by HUD that say to the contrary when there's other case law and so on that this was a change in the law, was it not? No. Why not? It's a clarifying amendment. I mean, I want to know why did they have... why did they call it a clarifying amendment if it was changing the law? Again, Your Honor, I don't believe it was changing the law. I believe what Congress has said is, HUD, you were wrong. Court, you were wrong. That doesn't make my point. You were wrong, meaning you had a different position before. We're straightening you out. What was their position before? Their position was that it was different. They were covered in Your Honor, I think we're confusing... I'm confusing here the whole issue of a supremacy clause with the issue of whether or not there's a clarifying amendment. Congress specifically stated that this is a clarifying amendment. What does the 180 days mean then? You know, I've never been able to figure that out candidly, Your Honor. It just appears out of thin air as balanced against the sponsor's comments, as balanced against the name of the amendment. Don't we need to weigh the text of the actual law more heavily than the title or some floor statements? That's a good question, Your Honor. I think they're co-equal. I think if I were sitting in your position, I would look at the law first, but I certainly would look at the title to assist me in my determination. But don't we only look at the title if the law is ambiguous? And I don't see how the 180 day leaves the law ambiguous. It seems like it makes no sense to have that provision unless the law is only going forward. Well, Your Honor, I could agree with you if there was some support for that position within any commentary anywhere. But we don't look at legislative history when the law is clear, and I just don't see how we get past the 180 days making this law clear. Well, Your Honor, again, without repeating myself, I don't believe that the 180 days is determinative. I think rather you have to balance between what the sponsors say, what the title of the act says, and what Congress voted unanimously to do as opposed to this 180 days, which just appears out of thin air. But counsel, I think we do get back to Landgraf. You've got four parts there. It might be helpful if you can tell us in what way this responds to Landgraf, because the reality is, if you look at the text first, if there's no ambiguity, the title doesn't make any difference. And anybody that considers the text these days knows that what members of Congress say in isolation probably doesn't mean much of anything. Sometimes committee reports maybe can be, but you can find whatever you want there. So just for humor, if you will, apply Landgraf to this case. How does it work? Of course. Landgraf, as the Court knows, is a two-part analysis. The first part of Landgraf is to look at whether the act or amendment is ambiguous and to look at it. We've discussed that at some length. The manifest injustice to the litigants, to the plaintiffs. And in this case, on the Ninth Circuit authority of Lyon, I would suggest to the Court that there is no manifest injustice to the plaintiffs, because what Lyon holds is that there is no vested right to a cause of action. Well, let's just say for a minute, just arguendo, that the plaintiffs in this case did, in fact, before the act, as you could construe it, have a cause of action. And there may be many others around the country had a similar situation based upon previously effective regulations. If this law does what you're talking about, it would, in fact, impact their causes of action, would it not? Your Honor, I think that's circular, to be honest. Okay. Because I think at the beginning, we look at whether you've already decided that we lose. If you've decided we lose, it becomes circular to say they had a right. Well, no, I'm asking you to, not to do that, I'm asking you to apply this in Landgraf. This is one of the prongs, if you will, of Landgraf, which is how it affects people who previously had causes of action. So I'm saying, hypothetically, if these folks had a cause of action based upon the previously existing HUD regulations, and this law changed it, if it did, doesn't this satisfy one of the prongs of Landgraf to show that there is a change and it does have an adverse impact on some people? Again, Your Honor, under Lyon, I don't believe it does. I don't believe that until there is a final determination by the court of liability that it is anything more than a cause of action under Lyon. Isn't that what Landgraf requires, though? That's what I'm asking. If there is a cause of action before, and this changes that, doesn't that satisfy one of the prongs of Landgraf? You know, Your Honor, I misunderstood your answer is, of course, you're correct. Okay. So that's that's one of the prongs. And that another prong has to do with whether the act itself clearly intended that the law be retroactive. What do you point to in the law that says that's the case? I think I can. I thank you for asking that, Your Honor. I would point out 1711A1 as compared to 1711A2 of 15 U.S.C. 1711A1 is the statute of repose for registration violations, and it contains no language that allows tolling or anything. Unless if it's a statute of repose. But in this case, you have 180-day effective date, basically, which would put it well beyond your concept of a statute of repose, under which, if I understand it correctly, after three years from the date of the signing of the contract, that's the end of the story. There's no more ifs, ands, or buts. Isn't that correct? That's correct. How do you reconcile the 180-day aspect of this law with your concept that this is a statute of repose? Your Honor, I don't find them to be contradictory at all. I compare A1 to A2, and A2 clearly says you can toll the statute of limitations, whereas A1 contains no such language. The courts are very clear that when laws set out one way and don't set it out the other, that the Congress has spoken. So, Your Honor, yes, I believe that 180 days has no relevance to the inquiry of whether this is a statute of repose or not. And what in this new law do you point that you say makes it a statute of repose? You're referring to a different part of the ILSA, but what are you referring to in this law that you think makes this a statute of repose? Your Honor, I'm looking... I'm sorry if I've misled the court. By statute of repose, I'm talking about the three years under statute. I understand that. That's in a different part of the law, right? Not in the amendment. No, it's not in the amendment. If the amendment amends ILSA, then that's part of ILSA. Okay, so my question is, since you have the 180-day effective date, so far as I can tell, no statute limitation, a statute of repose, I'm asking what you're relying upon in stating that the 180 days has nothing to do with the issue. You're saying that this law changed everything. I want to know how it... how that can be if it was intended to be prospective, which the 180 days arguendo suggests that it was. If Your Honor finds... if this court finds that it is prospective, then the conclusion that you've reached is correct. That's where I'd part company with you, is that it is prospective. And Your Honor, as to whether it is a statute of repose, I would invite the court's attention to CTS v. Waldberger, which is whether it's a statute of repose or whether it's a statute of limitation. As the Waldberger point... court points out, if it is a statute of repose, it will... they cannot accept and will not accept any tolling. And no one disagrees that without tolling, this case is dead in the water. So they require tolling. I don't think that's true. They talk about when it accrued. That's different than tolling. Again, it accrued under... under 1711. It accrued the day they signed the purchase and sale agreement, which was in May and December of 2006. That's if it's under ILSA, though. That's if it's under ILSA. If it's under the UCL, then it isn't dead, right? Again... again, Your Honor, we never reach the statute... we never reach UCL if it is a statute of repose. If it is not a statute of repose and we reach... we reach the statute of repose, we have to then look at tolling. But I submit to you... Well, it depends if there's preemption. I mean, it could be reposed but not preemptive. Well, I believe there's conflict preemption. I believe that the Congress has spoken and Congress has said that no claim under ILSA can go past three years. But they would say this is not a claim under ILSA. It's a claim under the UCL. With due respect to my colleagues, I think that's mincing words, Your Honor. The simple fact is that we know that UCL borrows the statute of limitations. And I see I'm running out of time. I'd like to ask you about that. Do you have any California case that says that the time of accrual for a UCL claim, when the UCL claim is based on a federal claim, has to be the same accrual date as the Thank you, Your Honor. You want to save some time? Okay, great. Thank you. Your Honor, Michael Rubin for the plaintiffs. With respect to retroactivity, let me just add one point to the belt of 180 days in the future and the administrative and judicial construction and the additional belt of no express retroactivity language. What counsel said at the outset was that Congress in 2014 clarified in the title that ILSA never applied to condominiums. But that's not what the 2014 amendments said. The 2014 amendments simply carved out an exception for condominiums to one part of ILSA. That amendment was in 1702 B9. The anti-fraud provisions of ILSA, everyone agrees, continue to apply to change or clarification to the definition of lots. And the case law is clear, the administrative agencies are clear, that as long as certain requirements are satisfied, lots includes condominiums. So all that happened in 2014 was a limited carve-out that couldn't have been clarifying because nothing was clarified. There was an exception drawn from part of a definition. Without the definition itself being changed, there was nothing to clarify. Let me just switch your attention for a moment, moving away from the amendment. As you know, the exclusive use issue has a big role to play in whether or not these lots, these condominium lots, were covered. Yes. And you can trace through what the previous regulations were and so on. One thing that kind of troubles me is this rental management agreement. Right. Now, it was signed after the original documentation, but it seemed by its terms to basically eliminate any period of time which your clients had the sole and exclusive right to the condominium and to remove people. Would you agree with that? I would agree that this would be a more difficult case had that not been an optional agreement signed afterwards because all of the rights and obligations under ILSA are measured as of the time of contracting. That's when the obligations go into force. That's when the clock starts running on the right to rescind. That's when the two-year, that's when rescission had to be in the purchase agreement and the two-year time limit would start. So you look to evaluate whether this is a covered condominium as of the time the purchase contracts were signed. As of the time the purchase contracts were signed, no one was required and no one had signed any rental management agreement. So something that happens afterwards, yes, the purchasers limited their ability of exclusive use after the fact. Let me ask you this. Let's assume for a moment that the, we'll call it the RMA, wasn't signed after the deal closed but maybe three weeks before. The owner came to your clients and said hypothetically, look I can just tell this is not going to work out very well. If this is going to balance economically, we really need your help right now. We'd like to amend the original documentation and include the RMA. That would also give you a problem, would it not? It would. It would be very complicated in this case though because we also rely on admissions. Admissions and statements at oral argument, both the express admission, both separate statement number 14 in the oral argument, which did not rest on the hypothetical but rested on the real facts. So had this case actually arisen in the context, then it would be a more complicated case. So this provision had sufficient use restrictions but under the facts that were admitted at the time period that counts. So the timing here is everything, is it not, right? It's most everything because we don't concede it would actually have made a difference because there are still the opportunity under the rental agreement itself, and we quoted the rental agreement, the owners still have that 28 days of exclusive use. In contrast, for example, could they have removed anyone else in the unit during that 28-day period under the terms of the RMA? Yes, yes. They still, and as always happens when you have a hotel and a guest, you can always exclude someone from your room. So if they had taken advantage and said this is the block of time, these are our 28 days, then they could kick anyone out of the room who tried to come in. In contrast with as Kirill pointed out, the district court opinion quoted the actual language from the agreement that said, and there there was a 14-day restricted provision, the hotel agent reserves the right without investor approval to change the investor occupancy period with a view to generating distributions to 53. Even in Betscher, the 14 days wasn't guaranteed. It could be eliminated to increase profits because all the profits in Betscher were shared among all the investors. Let me make sure I understand what you're saying. If I understand you correctly, you're saying that given the actual facts here that this document was that if it had been signed beforehand, it would still qualify under 61 Federal Reg 13,596, which is that right to eject another person during the time he was to use the lot, basically. Yes, because they would still have the 28 days. It's just what they've done is they've assigned the ability to rent and manage to the hotel. So I'm actually worried about the 28 days and the UMA, not the RMA, because of housekeeping. So it seems to me on ER 4442 that in the UMA that the hotel has the right to send in housekeeping when it thinks it's appropriate. And that, I wonder if that means that they don't actually have an argument that wasn't made, an argument that was necessarily waived by the admissions to the district court, and the failure to respond. But nonetheless, the answer is that like any hotel guest, you remember the scene in Paper Chase where they were rehearsing for their final exams and they barred the housekeeping. You can always keep, any hotel guest can keep housekeeping under the room while they are in the room. So the fact that the hotel would, under the normal course of management, be permitted to send in folks to clean the room is always subject to the discretion of the person in the room, in this case the owner. You can put a sign on housekeeping, stay away, and the housekeeping has to stay away. But that's an argument that wasn't asserted in this case. So when you talk about the concession, the oral argument exchange, as I read it, was about other guests coming in, not about housekeeping. And maybe your response would be the same, that no one was talking about housekeeping. Right. No one was talking about that. It was specifically asked about guests. No one was talking about housekeeping. But I don't think there's any dispute that any hotel room resident, whether the owner or anyone else, can stop housekeeping from coming in during the period of their stay. I actually had an experience once where I couldn't keep them out. But maybe it's the only time that's ever happened. Counsel, let me hear you go back to distinguishing that Sixth Circuit case. Yes, sir. I guess I read, at least reading the Sixth Circuit's opinion itself, I didn't see any real way of distinguishing that case from our facts, other than that it was just a shorter period of supposed exclusive use. So you made a stab at distinguishing it, but let me hear that again, because it didn't register. One of the bases for distinction that I gave earlier was actually a quote from the district court opinion in that case. That was the 920 FSUP at 1351-53, which said that in the purchase agreements itself, the 14-day period wasn't guaranteed. In order to increase profits to all investors, a owner could be the equivalent of the rental management agreement in that case. And this goes back to Judge Smith's hypothetical, was in effect at the outset. So these were sold subject to many uses. That's why the Sixth Circuit at page 481 described these as hybrid interests rather than divided interests. There are a series of limitations on the ability of any particular owner to use the rooms, and that's because these in Betscherer were purely for investment purposes. Everything was pooled together. All rental income from the entire property went to everyone. All control was delegated. In contrast, the purchase agreements here specifically say they're not for investment purposes. One of the benefits of owning a hard rock unit is you get your 28 days. All you have to do is reserve the days that you want, and at that point it is yours to do with however you want. That's a distinguishing factor. Now, of course, Betscherer might have come out another way had the District Court in Betscherer not ruled the way it did, because the Court of Appeal accepted the factual findings of the trial court, just as this court should be giving deference to the factual findings of Judge Curiel. So while there are certainly similarities, the facts as found by the respective district courts in those cases, based on the actual language of the purchase contracts, in one case that imposed extensive use limitations before the purchase contract was signed won ours, in which there were no such limitations, are the principle distinguishing factors. Is the only use limitation that you're talking about, though, that perhaps they couldn't use their 14 days there? Because here the purchase contract talks about a maximum of 28 days, so it's clear that someone else is going to be using these units the rest of the year in this contract, too. Right, and that's where we rely on the HUD guideline, which has not been challenged. The HUD says 14 days or 28 days, right? 14 days or 28 days. Perhaps someone would challenge it at 14 days, saying that's too short, but there's certainly no question that 28 days is sufficient. Yes, for that period of time, for 28 days, roughly a month, you have exclusive use of your property, and that's sufficient for purposes of the law. As it's developed, there's no case to the contrary to establish that you are the owner of a unit that is considered to be a condominium under the governing regulations and guidelines. On the shorthand, then, you think the Sixth Circuit case was talking about what securities lawyers call an investment contract? Absolutely. That's really what they had. They didn't have any rights in real estate. They just put their money in. Never any concept that they would ever have any right to do anything with the actual unit. Somebody else is going to manage them entirely, whereas here your position is that you fall under the HUD guidelines that your purchaser had the right, and I'm quoting, to eject another person during the time he has the right to use that lot. That's right. Is that correct? Yes. Where did the purchase agreement say that it's not an investment contract, or not an investment? 11 ER 2569, paragraph 19, I believe. All right, could you just say the ER page again? 2569, and I'm afraid I don't have a copy of it up here with me, but it should be paragraph 19. And that says this is not an investment contract, right? Correct. Do you have a case, going back to this accrual question, so they say they don't have a case under California law that says the same would, do you have a case the other way saying that it can accrue on a different date? I've struggled to find law on this either way. Whether, we certainly have plenty of UCL cases that explain when it accrues. You're asking if there's a federal case involving borrowing, sorry, a state case about a federal statute that has a different accrual date. I don't have such a case, but if you recall Prop 64 in California that provided you can't have a UCL case unless there's actual economic injury, the whole concept of borrowing could be eliminated. The guts of 17-200 would be wiped out unless the Prop 64 requirement applied, right? Because if you can't even have a UCL claim until there's been economic loss and you're borrowing as either an unlawful or an unfair practice from a federal statute that would create a complete cause of action before there was economic loss, at the time of Simon, for example, then there wouldn't be a UCL claim covering that federal statute at all, which would be illogical. You might just have a shorter time, I guess it depends how it all lines up, but like in this case there still would have been a period on that hypothetical, there still would be a period you could bring suit, it just wouldn't be as long as otherwise. That's right, but there may be plenty of cases where you get a longer period of time before there's economic injury, a shorter statute of limitations under the state claim on a state statute applying the state principles for accrual and the case you're looking for, to my knowledge, has not yet been decided. But the principles that have been decided directly apply. Do either of my colleagues have more questions for counsel? No. If not, we thank you very much. Sorry, I'm just looking now, I don't know if that is that 2569. Let's see, it's part of the purchase and sale agreement. The part of what was signed, not at the closing, like when was this signed, I guess is what I'm trying to figure out. What is this? Yes, I actually do have it, and it's 2562 states that this is the purchase contract in escrow instructions, and the signature date is, well, it's either going to be May or December, but this particular one looks like May 9th, 2006. That's the original contract, not the closing, is when this was... This is the purchase contract, that's right. This is the contract that has most of the provisions that we've been talking about, and this is Mr. Edelman's, but there are copies of all of them, and they're identical in the record. Thank you. Any further questions, my colleague? Thank you very much, counsel. We have a little bit of rebuttal time, counsel. Yeah, well, it's actually only 14, but we're gonna be really generous and give you a full minute. Thank you. First of all, with respect to exclusive use, your honors, there is no exclusive use. It's, you can rent a unit according to the UMA, just like any other. You call up and say, I'd like to use it. It's not a specific, you use February to March, or you use December. It's, you're a guest, and I'd like to refer the court... But you have a guarantee to be a guest for 28 days, right? A maximum of 28 days, but no specific 28 days. Why does that matter? Yeah, it matters because we're talking exclusive use, and there is no exclusive use because anybody can rent it. If, for example, the most popular time at the Hard Rock Hotel is Comic-Con. It's already leased out years in advance to other people. If I have a unit there, I can't call up and say, I want Comic-Con. I can't kick those people out. They're registered guests. They get first pick. That's what the UMA says. What happens if you get to December 1st, and you haven't used it yet? Can you get December? Because you have a guarantee for 28 days? If it isn't already rented, if it's already rented, you don't get it. Period. That's what the UMA says. Where does the UMA say that? I'm sorry, I don't have that reference. This was, I'm sorry, I don't, do not have that reference. That's, but that's not really unusual, is it, Counselor? Even putting aside this, it's a regular house. If you've already rented the place, you can't go back in yourself. The fact that they can't lease, a person cannot use a unit that's already been leased is, it's not particularly startling, is it? No, and that's my point about exclusive use. And if I might refer your court, refer the court to ER 150405, and it's the UMA, and it permits, that it states that the hotel, not the guests, the hotel has all keys, housekeeping, furnishing, linens, telephone, cable, television, mini bar rentals, and other items were under the exclusive control of the hotel. And did you make that argument? They're saying you never talked about housekeeping. That is not true, Your Honor. It was, it was made throughout all of the pleadings, throughout all of the, I don't know whether it was made an oral argument, but it certainly was made during all of the pleadings. It's been front and center from day one. Any other questions by my colleagues? Nope. Thank you very much. Thank you for the extra minute, Your Honor. Both counsel, your very helpful argument on this interesting case. This case, the case just argued is submitted.
judges: M. Smith, Watford, Friedland